UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BOSE CORPORATION,
    Plaintiff,

    v.                                       CIVIL ACTION NO.
                                             09-11479-PBS

JOHN NEHER, et al.,
    Defendants.

**REPORT AND RECOMMENDATION RE:
DEFENDANT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION
<u>(DOCKET ENTRY # 35)</u>**

**July 13, 2010**

**BOWLER, U.S.M.J.**

    Pending before this court is a motion to dismiss for lack of personal jurisdiction filed by defendant Heather Wade ("defendant") under Rule 12(b)(2), Fed. R. Civ. P. ("Rule 12(b)(2)"). (Docket Entry # 35). Plaintiff Bose Corporation ("plaintiff") opposes the motion and requests alternatively to transfer action against defendant to the United States District Court for the Southern District of Iowa should defendant's motion be allowed. (Docket Entry ## 38 & 46). For the reasons articulated below, plaintiff makes a sufficient prima facie showing of personal jurisdiction over defendant and defendant fails to demonstrate that venue is improper in this district.

PROCEDURAL BACKGROUND

On September 4, 2009, plaintiff filed this action challenging the use of its trademark on the part of defendant and others.  The complaint alleges trademark counterfeiting and trademark infringement arising under the Lanham Act, 15 U.S.C. § 1051, et seq., and under the Anti-Counterfeiting Consumer Protection Act of 1996, 15 U.S.C. § 1116(d).  (Docket Entry # 1).  Plaintiff also alleges unfair competition under 15 U.S.C. § 1125 and unfair trade practices under Mass. Gen. Laws ch. 93A § 11.  (Docket Entry # 1).

STANDARD OF REVIEW

This circuit entertains different standards for reviewing a motion to dismiss for want of personal jurisdiction.  Neither plaintiff nor defendant has suggested a standard of review.  "The most conventional" and more frequently employed method is the "prima facie method."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, 290 F.3d 42, 50 (1st Cir. 2002) ("Daynard").  This method allows a court "'to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'"  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) (citation omitted) ("Foster-

Miller"). A plaintiff has the burden of demonstrating "evidence of specific facts" with properly documented evidentiary proffers. Id. Such evidence includes the affidavits in the record. See Daynard, 290 F.3d at 45. A plaintiff's properly documented proffers must be taken as true for the purpose "of determining the accuracy of the prima facie jurisdictional showing." Id. at 51 (citing Foster-Miller, 46 F.3d at 145). This court "take[s] these facts 'as true (whether or not disputed) and construes them in the light most congenial to the plaintiff's jurisdictional claim.'" Daynard, 290 F.3d at 51 (citing Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

Another standard of review requires more than a prima facie showing. This standard is only appropriate, however, "when the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiff's affidavits are 'patently incredible.'" Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 676 (1st Cir. 1992) (citations omitted). The evidentiary record does not suggest that plaintiff's evidence is "rife with contradictions" or "patently incredible." The prima facie standard therefore applies.

FACTUAL BACKGROUND

Plaintiff, a Delaware corporation with a principal place of business in Framingham, Massachusetts, manufactures various audio technology products. (Docket Entry # 1). Additionally, plaintiff designs, manufactures and sells QuietComfort Acoustic Noise Canceling headphones. (Docket Entry # 38). Plaintiff is the sole owner of the federally registered BOSE® mark. (Docket Entry # 38).

In the fall of 2007, plaintiff discovered that websites originating in China were selling counterfeit BOSE headphones®. (Docket Entry # 40). The counterfeit headphones are identical to authentic BOSE headphones® in appearance but "are of vastly inferior quality." (Docket Entry # 40). After receiving complaints from customers, many of whom "believe they are obtaining genuine Bose products[,]" plaintiff investigated the sale of the counterfeit Bose products. (Docket Entry # 40) Plaintiff's investigation concluded that individuals were redistributing the counterfeit headphones via internet websites such as www.ebay.com. (Docket Entry # 40). Plaintiff notified many of the sellers that their products were counterfeits and requested that they cease selling the counterfeit Bose products.

(Docket Entry # 40).  There is no indication in the record that any of the notifications were made directly to defendant.

Defendant, a resident of Iowa, has never been employed in Massachusetts, nor has she resided therein.  (Docket Entry # 36).  Her primary responsibility is a "stay-at-home mother."  (Docket Entry # 36).  Defendant, through her eBay account IntegrityPartners08, purchases and sells various items to supplement the family income.  (Docket Entry # 36).

On February 2, 2009, plaintiff's private investigator, James Landers, discovered QuietComfort Acoustic Noise Canceling headphones posted for sale on the IntegrityPartners08 eBay account.  (Docket Entry # 39).  The headphones were available for sale to eBay buyers from the United States, the United Kingdom and Germany.  (Docket Entry # 38).  The private investigator purchased the headphones via eBay's "buy it now" feature for $148.99 on the same day.  (Docket Entry # 38).  The "buy it now" feature allows the buyer to immediately purchase an item on eBay for a set price in lieu of bidding.  (Docket Entry # 38).

When purchasing the headphones, the investigator entered a Massachusetts mailing address.  (Docket Entry # 38).  The investigator received the headphones later that month in Milton, Massachusetts.  (Docket Entry # 38).  The return address on the

shipping label corresponds to defendant's address as noted in the motion to dismiss.  (Docket Entry ## 35 & 39, Ex. C).  After receiving the headphones, the investigator sent them to plaintiff for testing.  (Docket Entry # 39).  After testing, plaintiff determined that the headphones received from the investigator were counterfeit.  (Docket Entry # 40).

DISCUSSION

The facts fail to suggest that defendant had "continuous and systematic" contact with this forum unrelated to the present suit that would give rise to general jurisdiction.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); see also Perkins v. Benguet Consol. Min. Co., 342 U.S. 437, 438 (1952) (the defendant had continuous and systemic contact with the forum such that asserting general jurisdiction is "reasonable and just").  Defendant does not own or possess real property in Massachusetts, nor does she maintain a business in Massachusetts.

Plaintiff therefore relies on specific jurisdiction as a means to hale defendant into this court.  Subject matter jurisdiction in this case is based upon a federal question and supplemental jurisdiction.  Because the relevant federal statutes do not explicitly authorize service throughout the United States,

sufficient contacts must exist to satisfy the Massachusetts long-arm statute, Massachusetts General Laws chapter 223A ("chapter 223A") as well as the Due Process Clause.  See <u>United Elec., Radio & Mach. Workers of America v. 163 Pleasant Street, Corp.</u>, 960 F.2d 1080, 1086 (1st Cir. 1992).

Plaintiff cites to both sections (c) and (d) of chapter 223A, § 3.  (Docket Entry # 38).  Section three of chapter 223A states:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . (c) causing tortuous injury by an act or omission in this commonwealth; [or] (d) causing tortuous injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

M.G.L. ch. 223A, § 3.  Section 3(d) of chapter 223A does not apply because the facts do not suggest that defendant "regularly" engages in any conduct in Massachusetts, or that defendant derives "substantial revenue" from business conducted in Massachusetts.  See <u>Keds Corp. v. Renee Int'l Trading Corp.</u>, 888 F.2d 215, 219 (1st Cir. 1989) ("'substantial revenue' is not an absolute amount nor an absolute percentage of total sale" and

7

"[a]ll that is required is literal satisfaction of the statutory requirement").

Turning to section 3(c), the provision is as expansive as the boundaries of the Due Process Clause. See Daynard, 290 F.3d at 52 ("the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution'"). This court therefore turns directly to the constitutional inquiry. See Id.; see also Sawtelle v. Farrell, 70 F.3d at 1388 ("when a state's long-arm statute is coextensive with the outer limits of due process, the court's attention properly turns to the issue of whether the exercise of personal jurisdiction comports with federal constitutional standards").

The constitutional inquiry under the Due Process Clause contains three components: (1) relatedness; (2) purposeful availment; and (3) reasonableness. See Foster-Miller, 46 F.3d at 144. Even if plaintiff satisfies the reasonableness component, personal jurisdiction cannot be asserted if it violates the concepts of "fair play and substantial justice." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). That is to say that jurisdiction should not be asserted in such a

way as to make "litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." Burger King Corp. v. Rudzewicz, 471 U.S. at 478.  This court now turns to these three components.

A.   Relatedness

Relatedness mandates that the claim "must directly arise out of the specific contacts between the defendant and the forum state."  Sawtelle v. Farrell, 70 F.3d at 1389; accord Ticketmaster-New York v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994) ("requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action").  Put another way, defendant's contacts with Massachusetts must give rise or relate to plaintiff's cause of action.

Here, advertising the sale of a counterfeit item to a Massachusetts resident is exactly what gives rise to plaintiff's causes of action of trademark counterfeiting and trademark infringement.  (Docket Entry # 38).  Defendant's contact with the forum of Massachusetts was her maintenance of an eBay posting for the allegedly counterfeit in-ear headphone speakers.  (Docket Entry # 38).  By posting the item on eBay, defendant made the item available to Massachusetts prospective customers.  Additionally, her contact with this forum includes her alleged

sale of the speakers to a buyer in Massachusetts. (Docket Entry # 38). With respect to trademark cases, courts find that mere advertising through a website is enough to satisfy the relatedness prong of a personal jurisdiction analysis. See Hasbro, Inc. v. Clue Computing, Inc., 994 F.Supp. 34, 44 (D.Mass. 1997). Accordingly, the first prong of relatedness is met here.

B.  Purposeful Availment

The purposeful availment prong relates to the defendant's voluntariness of being connected to the jurisdiction and the foreseeability of being haled into court in the jurisdiction. See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir. 1996). The purposeful availment prong requires that defendant purposely avail herself "of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making her involuntary presence before the state's courts foreseeable." Foster-Miller, 46 F.3d at 144, see also Lawson v. Affirmative Equities Corp., 341 F.Supp.2d 51, 59 (D.Mass. 2004) (proper focus is on "the nature of the contact with the forum" and a court should "avoid playing a 'numbers game'" inasmuch as "a single, meaningful contact with the forum, even by means of a virtual presence, 'can fill the bill'"). For example, the court in Gary Scott Int'l,

Inc. v. Baroudi, 981 F.Supp. 714 (D.Mass. 1997) held that the defendant was subject to personal jurisdiction after he marketed his product nationwide, rather than limiting the sale of his products to his home state of California.  The court stated:

> [D]efendant accepted both the benefits and the risks of nationwide business.  One of the risks inherent in defendant's decision to pursue nationwide sales was the possibility that he could be haled into a Court in a foreign state where his humidors were marketed and sold.  Defendant marketed its product in Massachusetts.  Defendant sold its product in Massachusetts.  These voluntary actions connect the defendant to Massachusetts and make it foreseeable that he might be sued in the Commonwealth.

Id. at 717.

Defendant availed herself of the Massachusetts forum by having an interactive eBay posting.  Her posting is such that customers can opt to buy her allegedly counterfeit product either by bidding or by immediate purchase.  See Hasbro, Inc. v. Clue Computing, Inc., 994 F.Supp. at 45 ("Clue Computing's Web site is interactive, encouraging and enabling anyone who wishes, including Massachusetts residents, to send email to the company" thereby satisfying "the 'purposeful availment' due process test").

While the First Circuit has not addressed the issue in depth, a number of courts have held that defendant must do

11

"something more" than merely operate an interactive website targeting Massachusetts residents in order to purposely avail herself of this forum.  See Venture Tape Corp. v. McGills Glass Warehouse, 292 F.Supp.2d 230, 232-233 (D.Mass. 2003).  In addition to using an interactive website, however, defendant purposely availed herself of the Massachusetts forum when she allegedly made a sale of allegedly counterfeit headphones to a Massachusetts buyer.  When she made the alleged sale, defendant did "something more" than just operate an internet posting accessible to Massachusetts residents.  See Gary Scott Int'l v. Baroudi, 981 F.Supp. at 717 (the defendant purposely availed himself of the Massachusetts forum by marketing and selling his products in the forum); see also Northern Light Tech., Inc. v. Northern Lights Club, 97 F.Supp.2d 96, 107 (D.Mass. 2000) (defendants purposely availed themselves by intending to conduct business in the forum state through a website).  Plaintiff has satisfied its burden of making a prima facie showing that defendant sold the allegedly counterfeit headphones to a Massachusetts resident.  Defendant, however, alleges (without any supporting evidence) that the sale never took place.  (Docket Entry # 36).

Even assuming that she never sold any allegedly counterfeit headphones to a Massachusetts address,[1] the purposeful availment prong is still met if plaintiff demonstrates her alleged trademark infringement against a Massachusetts company. See Venture Tape Corp. v. McGills Glass Warehouse, 292 F.Supp.2d at 233. The court in Venture Tape Corp. v. McGills Glass Warehouse held that the defendant should anticipate being haled into the Massachusetts forum after allegedly committing the tort of trademark infringement on a Massachusetts company. Id. The court based this on the assertion that a trademark infringement injury occurs in the state where the trademark owner resides. See Id. It also held that because the case involved the tort of trademark infringement, "the threshold of purposeful availment is lower." Id. Although "'[t]he defendant allegedly causing harm in a state may understandably have sought no privileges there[,] . . . the defendant's purpose may be said to be the targeting of the forum state and its residents.'" Id. (citing Digital Equip.

---

[1] A court is not required "to credit conclusory allegations or draw farfetched inferences." Massachusetts School of Law, 142 F.3d at 34; see also Foster-Miller, 46 F.3d at 146. Accordingly, this court is not required to credit defendant's mere affirmation that she did not sell any product to a Massachusetts customer, especially considering plaintiff's countervailing evidence. Defendant's conclusory assertions made in her supporting memorandum (Docket Entry # 36) are insufficient to allow dismissal due to a lack of personal jurisdiction.

Corp. v. AltaVista Tech., Inc., 960 F.Supp. 456, 469 (D.Mass. 1997)).

In Northern Light Tech., Inc. v. Northern Lights Club, the defendant posted a trademark infringing website that "entered" the injured party's home forum of Massachusetts. Id. at 107. The Northern Light Tech., Inc. v. Northern Lights Club court found that the defendant therefore purposely availed itself of the Massachusetts forum. Id. In Digital Equip. Corp. v. AltaVista Tech., Inc., the defendant operated a website that violated the plaintiff's trademark. Digital Equip. Corp. v. AltaVista Tech., Inc., 960 F.Supp. at 470. Because the defendant violated a Massachusetts resident's trademark and maintained a website that would attract Massachusetts residents, the defendant should have anticipated being haled into the forum. Id.

Similarly here, defendant allegedly violated the trademark of a Massachusetts corporation and maintained an interactive web posting capable of being accessed in Massachusetts. To conclude, because of her alleged sale in Massachusetts and because she is an alleged tortfeasor against a Massachusetts resident, this court finds that defendant purposely availed herself of the Massachusetts forum.

C.  Reasonableness

Finally, the assessment of the reasonableness prong entails the so-called "gestalt factors," which include: (1) the burden upon the defendant's appearance; (2) the forum state's interest in adjudicating the controversy; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting effective social policy.  See Nowak v. Tak How Investments, Ltd., 94 F.3d at 717 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

Defendant may be burdened in having to cross over several state lines to appear in the Massachusetts forum, although she did not explicitly argue her appearance would be unduly burdensome.  This, however, "may well be the price of . . . do[ing] business involving the Internet . . .; if one does something that could cause a tort in another state, then this inconvenience should be considered by potential foreign defendants before they act."  Digital Equip. Corp. v. AltaVista Tech., Inc., 960 F.Supp at 471.  This first factor is only considered when a defendant "can demonstrate some kind of special or unusual burden."  Pritzker v. Yarl, 42 F.3d 53, 64 (1st Cir. 1994) (finding no burden solely in the travel between Puerto Rico

15

and New York).  Accordingly, the travel between Iowa and Massachusetts does not strike this court as unusually burdensome.  Furthermore, the evidence does not indicate that plaintiff chose the Massachusetts forum in order to "harass" defendant.  See Ticketmaster-New York v. Alioto, 26 F.3d at 211.

Turning to the second factor, "the interest of Massachusetts in hearing this suit weighs in favor of the [p]laintiff." Northern Light Tech., Inc. v. Northern Lights Club, 97 F.Supp.2d at 107.  Here, as in Northern Light Tech., Inc. v. Northern Lights Club, the plaintiff is located in Massachusetts and the alleged trademark infringement would likely have significant effects here.  See Id. at 107.  "Massachusetts has an interest in preventing trademark infringement against those subject to the protections and requirements of its laws."  Hasbro, Inc. v. Clue Computing, Inc., 994 F.Supp at 45.

The third factor of convenience to the plaintiff obviously weighs in favor of the plaintiff.  Plaintiff is based in Massachusetts and a considerable amount of evidence derives from Massachusetts.  See Id.  Additionally, its counsel and its executives are based in Massachusetts.  See Digital Equip. Corp. v. AltaVista Tech., Inc., 960 F.Supp. at 471.  Primarily, however, "[t]his [c]ourt will 'accord deference to'" the

16

plaintiff's "'choice of a Massachusetts forum . . ..'"  Id. (citation omitted).

The administration of justice appears to be neutral on this matter.  Moreover the parties fail to identify any particular social policy favoring or disfavoring the Massachusetts forum.

In sum and on balance, the exercise of personal jurisdiction over defendant is reasonable and fundamentally fair.  There is no indication that doing so would offend traditional notions of fair play and substantial justice.  See Burger King Corp. v. Rudzewicz, 471 U.S. at 477-78 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 292).

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[2] that defendant's motion to dismiss for want of personal jurisdiction (Docket Entry # 35) be **DENIED**.

　　　　　　　　　　　　　　　　　　/s/ Marianne B. Bowler
　　　　　　　　　　　　　　　　　　**MARIANNE B. BOWLER**
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and accompanied by the basis for such objection. Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order. See Rule 72, Fed. R. Civ. P.